OPINION OF THE COURT
Carolyn E. Demarest, J.
Defendant Hector Dieppa stands convicted upon a jury verdict of two counts of discrimination as defined in subdivision (2) of Civil Rights Law § 40-c and one count of aggravated harassment in the second degree (Penal Law § 240.30 [3]) arising out of two separate incidents on January 10, 1992 and *585 February 6, 1992, in which the defendant either physically attacked or verbally threatened the life of the complainant Abdul Ghaffor Mohibi, an employee of a fast food store located on Eastern Parkway in Kings County.
At the conclusion of all the evidence the defendant moved, pursuant to CPL 290.10, to dismiss, inter alla, the two counts charging discrimination on the ground that the proof was legally insufficient to establish that the defendant’s conduct was of the nature proscribed by the statute. The court reserved decision and submitted the case to the jury. The defendant has now renewed his application, pursuant to CPL 330.30 (1), and seeks to set aside the verdict as to those two counts.
The evidence established that over the course of several months preceding the first incident on January 10, the defendant, a frequent customer of the fast food store, had engaged in a pattern of verbal harassment of Mr. Mohibi, in which he would enter or stick his head in the store and direct obscenities and religious epithets at Mr. Mohibi, a native of Afghanistan. Among other things, the defendant repeatedly called him "a filthy Jew”. Notwithstanding this conduct, the defendant continued to patronize the store.
On the evening of January 10, 1992, the defendant entered the premises with several companions and placed an order for food. While Mr. Mohibi was cleaning the table at defendant’s request, the defendant suddenly struck him in the head with a bottle, grabbed him and stabbed him in the back with a sharp object. As a result of this attack, Mr. Mohibi suffered various injuries, including a punctured lung, which required an extended period of hospitalization.
On February 6, 1992, shortly after being released from the hospital, Mr. Mohibi, although not yet able to return to work, was visiting the store, owned by his brother-in-law, when the defendant suddenly appeared outside the store, threw a garbage can through the front window and again shouted obscenities and religious epithets at Mr. Mohibi, threatening at one point to kill him if he called police. In response to a telephone call to 911, the police arrived a short time later and placed the defendant under arrest.
At the conclusion of the trial, the jury acquitted the defendant of charges of assault in the first degree and criminal possession of a weapon in the fourth degree pertaining to the January 10 incident, but found him guilty of two counts of *586 discrimination as defined in subdivision (2) of Civil Rights Law § 40-c for the January 10 and February 6 incidents and one count of aggravated harassment in the second degree based upon the January 10 incident.
DISCUSSION
The question presented, one of first impression, is whether the acts of defendant constitute a criminal violation of Civil Rights Law § 40-c (2).
Section 40-c of the Civil Rights Law, captioned "Discrimination” and contained within article 4, entitled "Equal Rights in Places of Public Accommodation and Amusement”, provides:
"1. All persons within the jurisdiction of this state shall be entitled to the equal protection of the laws of this state or any subdivision thereof.
"2. No person shall, because of race, creed, color, national origin, sex, marital status or disability, as such term is defined in section two hundred ninety-two of the executive law, be subjected to any discrimination in his civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state.”
At the time of the acts complained of in the indictment, "Harassment”, a violation, was defined in Penal Law § 240.25 as follows:
"A person is guilty of harassment when, with intent to harass, annoy or alarm another person:
"1. He strikes, shoves, kicks or otherwise subjects him to physical contact, or attempts or threatens to do the same; or
"2. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or
"3. He follows a person in or about a public place or places; or

”[4. Repealed]

"5. He engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.”[1]
*587 It is apparent that the actions of defendant in striking and stabbing complainant on January 10 and threatening to kill him on February 6 easily fulfill the legal elements of "Harassment” as defined in Penal Law § 240.25. However, Civil Rights Law § 40-c further requires proof, not merely of the intent to harass, annoy or alarm, but also that defendant’s acts were committed because of the complainant’s race, creed, color, national origin, sex, marital status or disability, as perceived by defendant, and an intent to discriminate against complainant in the exercise of his civil rights.
Complainant testified that Mr. Dieppa persisted in calling him "filthy Jew” and "fucking Jew” despite his protests that he is not Jewish. Notwithstanding this error on defendant’s part, his behavior was clearly motivated by what defendant perceived to be complainant’s ethnic and religious background and the element of causal relationship is therefore established. (Cf., People v Grupe, 141 Misc 2d 6, 9 [Crim Ct, NY County 1988].) The element of "discrimination” in the exercise of complainant’s "civil rights” requires more extensive analysis.
The substance of Civil Rights Law § 40-c was initially adopted as article I, § 11 of the NY Constitution, effective January 1, 1939. Thereafter, the Penal Law was amended to add article 67, "Discrimination”, which became law on April 30, 1941 (L 1941, ch 910), and substantially tracked the language of the constitutional provision. The sponsor of this legislation, Assemblyman William T. Andrews, introduced the amendment in order to better implement the policy expressed in article I, § 11 of the NY Constitution by authorizing "punitive provisions” (Andrews Mem to Gov Lehman in Support of A 1277, print 2548, Apr. 18, 1941, Bill Jacket, L 1941, ch 910). Mr. Andrews further explained:
"The provisions of this bill go beyond the scope of sections 40 and 41 of the Civil Rights Law and also beyond the scope of section 514 of the Penal Law.
"The term 'civil rights’ as used in our American jurispru *588 dence has no fixed or absolute definition. It has been interpreted by the courts to include many rights, and by the same method of interpretation, it excludes others. For our purposes those definitions are found in the decisions of the United States Supreme Court and the decisions of our own state courts. It is submitted that it is not advisable at this time in the development of our law to have our Legislature attempt a definition of the term."[2]
Unfortunately, it is this absence of clear definition of what "civil rights” were intended to be protected under the statute that gives rise to the instant controversy.
The Court of Appeals has defined "civil rights”, as secured under article I, § 11 of the NY Constitution, to mean " 'those rights which appertain to a person by virtue of his citizenship in a state or community’ ”. (People v Kern, 75 NY2d 638, 651 [1990], quoting 4 Rev Record of NY State Constitutional Convention, 1938, at 2626 [statement of Delegate H.E. Lewis].) Relying on the same constitutional debate, the Court simultaneously noted, however, that the Civil Rights Clause of the NY Constitution is not self-executing and prohibits discrimination only as to civil rights which are " 'elsewhere declared’ ” as such by Constitution, statute or common law. (Supra, at 651; see also, Dorsey v Stuyvesant Town Corp., 299 NY 512, 531 [1949].)[3]
Over the years since enactment of the Civil Rights Law, our *589 Legislature has given frequent consideration to protecting the "civil rights” of citizens. The single most extensive compendium of this legislative concern is the Human Rights Law, article 15 of the Executive Law. Executive Law § 291 (1) and (2) declares the opportunity, both to obtain employment, and to obtain the ownership, use and occupancy of commercial space without discrimination because of race, creed, color or national origin, to be civil rights.
Notwithstanding the caption of article 4 of the Civil Rights Law, in which section 40-c is contained, "Equal Rights in Places of Public Accommodation and Amusement”, which suggests that the statute applies only to public access to such places, the statute has been more broadly construed to encompass, for example, invidious gender discrimination in employment (People v Holiday Inns, 656 F Supp 675, 682 [WD NY 1984]), and exclusion from union membership based on race which also denies employment opportunities (Gaynor v Rockefeller, 15 NY2d 120, 129 [1965]). It is clear from this precedent that intentional interference with complainant’s "civil right” to be employed in his brother-in-law’s fast food store, based upon perceptions of his race, creed or national origin, is proscribed behavior under Civil Rights Law § 40-c.
Moreover, as a rule, generalities of an article’s heading must yield to the specific language of the statute. (Rivers v Sauter, 26 NY2d 260, 262 [1970].) When the language of the statute is clear and unambiguous, as here, the plain meaning of the language is to be given full effect. (People v Floyd J., 61 NY2d 895, 896 [1984].) On its face, Civil Rights Law § 40-c is clear: all persons are protected from harassment or discrimination in the exercise of their civil rights because of race, creed, color, national origin, sex, marital status or disability by any other person or institution. The harassing conduct of the defendant, in repeatedly threatening and physically abusing Mr. Mohibi at his place of employment (which coincidentally was also a place of "public accommodation”), because of Mr. Mohibi’s perceived race or creed, clearly provided a factual basis for the jury’s verdict that defendant had affected the exercise of Mr. Mohibi’s civil right to pursue employment and to engage in the use and occupancy of the food store, in contravention of Civil Rights Law § 40-c.
This court finds the defendant’s described interference with *590 the exercise of Mr. Mohibi’s civil rights to be criminal within the intendment of Civil Rights Law § 40-c (2) and legally constitutes the crime of discrimination as defined by that statute. Accordingly, the motion to set aside the convictions upon the two counts of discrimination is denied.

. Penal Law §240.25 has since been significantly amended, effective November 1, 1992. (L 1992, ch 345, §3.) Former section 240.25 is now substantively Penal Law § 240.26, harassment in the second degree. Subdivi *587 sion (2) of Penal Law § 240.25 was held to be unconstitutional prior to the subject incidents. (People v Dietze, 75 NY2d 47 [1989].) It is not this section, however, that provided the basis for the discrimination counts of the indictment. Insofar as count 6 is based on defendant’s threat to kill complainant on February 6, the Dietze decision as to subdivision (1) of Penal Law § 240.25 is distinguished factually. The evidence of Mr. Mohibi’s very serious injury at defendant’s hands on January 10 is more than sufficient to establish the "seriousness” of the threat on February 6.

. Notwithstanding Mr. Andrew’s intent in adding this statute to the Penal Law to provide more substantial penalties than those contained in the Civil Rights Law, when the Penal Law of 1909 was repealed and superseded by the Penal Law of 1965, this statute was omitted and moved to its present location as sections 40-c and 40-d of the Civil Rights Law, effective September 1, 1967 (L 1965, ch 1031, § 19). The present cross-reference to Penal Law § 240.25 was added in 1981. (L 1981, ch 870.) Thereafter, effective September 1, 1982, Penal Law § 240.30 was amended to criminalize as aggravated harassment in the second degree the very same conduct prohibited in Civil Rights Law § 40-c and Penal Law § 240.25 (L 1982, ch 191). The distinguishing element of "Discrimination”, as described in Civil Rights Law § 40-c, is the requirement that such conduct affect the exercise of complainant’s civil rights.

. A primary concern in the Kern case (supra), as in most precedent involving the issue of what constitutes a constitutional violation of "civil rights”, is the element of State action. (See, e.g., Dorsey v Stuyvesant Town Corp., supra; Holy Spirit Assn. v New York State Congress of Parents & Teachers, 95 Misc 2d 548, 552-553 [Sup Ct, NY County 1978].) Civil Rights Law § 40-c, by its terms does not, however, require State participation in that any person, firm, corporation, institution, State or subdivision, thereof, is expressly prohibited from violating its purpose to protect all persons from discrimination in their civil rights.