(993 P.2d 1249)

No. 81,461

STATE OF KANSAS, *Appellee*, v. NATHANIEL D. THOMAS, *Appellant*.

 Opinion filed
December 23, 1999. 

*Karen Eager*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Jan Satterfield*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BRAZIL, C.J., LEWIS, J., and MARLA J. LUCKERT, District Judge, assigned.

BRAZIL, C.J.: Nathaniel D. Thomas appeals his convictions of injury to a pregnant woman, aggravated battery, and criminal threat. He argues ineffective assistance of counsel, multiplicitous charges, and prosecutorial misconduct.

C.B., the victim, testified that Nathaniel Thomas called her around 12:45 a.m. on May 21, 1997. C.B. then proceeded to Thomas' house, picked him up around 1:15 a.m., and drove out to the lake. C.B. was 5½ months pregnant with Thomas' baby. Thomas did not want the baby and wanted her to have an abortion. Thomas repeatedly struck, hit, and kicked her about the abdominal region while they were parked out at the lake that night. C.B. testified that Thomas threatened to kill her. C.B. then drove Thomas home.

Thomas testified that he was asleep on the couch and never left the house in the early morning hours of May 21, 1997.

C.B. went to the emergency room about 24 hours after the beating. The medical evidence of C.B.'s injuries was consistent with her being beaten within 24 hours of her reporting to the hospital. C.B. sustained numerous bruises throughout her trunk and abdom-

inal region. Doctors determined the fetus had died and induced labor.

Thomas was convicted of injury to a pregnant woman, aggravated battery, and criminal threat.

### Ineffective Assistance of Counsel

Thomas argues that he was denied his right to effective assistance of counsel. In the hearing on the motion for a new trial, Thomas argued that he had four alibi witnesses who were barred from testifying because defense counsel failed to file a notice of alibi as required by K.S.A. 22-3218. Diane Thomas, the defendant's mother, claimed that she informed defense counsel of the alibi witnesses 9 months prior to trial. Thomas' sister, Natasha, testified that she woke up around 2 a.m. and saw Thomas sleeping on the couch. The trial court denied the motion for a new trial. Thomas claims that the alibi defense was his sole theory of defense and that the failure to file the notice of alibi denied Thomas effective assistance of counsel.

Before counsel's assistance is determined to be so defective as to require reversal of a conviction, defendant must establish that (1) counsel's performance was deficient, which means counsel made errors so serious that counsel's performance was less than that guaranteed by the Sixth Amendment, and (2) the deficient performance prejudiced the defense, which requires showing counsel's errors were so serious they deprived defendant of a fair trial. *State v. Rice,* 261 Kan. 567, 598-99, 932 P.2d 981 (1997).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. To show prejudice, the defendant must show a reasonable probability that but for counsel's unprofessional errors, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. *Rice,* 261 Kan. at 599-601.

The performance and prejudice prongs of the ineffective assistance of counsel inquiry are mixed questions of law and fact on

appeal requiring de novo review. *State v. Orr,* 262 Kan. 312, 321, 940 P.2d 42 (1997).

At the close of the State's case, defense counsel argued to the trial court that he should be permitted to present alibi testimony even though he had not filed a notice of alibi. Defense counsel argued that Thomas' stepfather and sisters, Victoria and Natasha, could vouch for his whereabouts at the time of the battery and should be allowed to testify even though he had not filed notice. After a colloquy between the court and defense counsel, it became apparent that Natasha was the only true alibi witness and that counsel had decided to call only Natasha. Defense counsel argued that these witnesses had been endorsed by the State, and, therefore, there was no element of surprise. The State responded that it had not had the opportunity to interview Natasha and did not know what she would testify relating to alibi. The trial court ruled that because Thomas had not complied with K.S.A. 22-3218, he could not present witnesses who could support his alibi defense. After trial, Thomas hired new counsel who investigated the claim of ineffective assistance of counsel. New counsel filed a motion for a new trial based upon the ineffective assistance of counsel claim, which was denied. The defense counsel who conducted the trial was not called as a witness. However, when he argued at the close of the State's case to be permitted to present alibi testimony, he offered no explanation for his failure to file a notice of alibi, other than he was relying on the fact that those witnesses had been endorsed by the State.

In *State v. Sanford,* 24 Kan. App. 2d 518, 948 P.2d 1135 (1997), defense counsel filed a notice of alibi and then decided not to develop the alibi argument because he concluded some of the witnesses would be hostile, at least one witness would be offering perjured testimony, and it would be a waste of resources to search for others.

The court concluded that it would not be improper to refuse to use perjured testimony. However, it held that counsel's perfunctory attempts to contact alibi witnesses and failure to investigate further was not reasonable under the facts presented. The case was reversed and remanded for a new trial.

Similarly, in this case, we conclude it was not reasonable for counsel to fail to file the notice of alibi when Thomas' sole defense was alibi. At least Natasha, if no one else, could have supported his defense that he did not leave home on the night in question. Although Natasha was a family member and might have created a credibility problem, the State had only C.B.'s testimony that Thomas had committed the crimes charged. It had no corroborating witnesses or physical evidence to support that Thomas and C.B. were together.

Natasha's alibi testimony could have created a reasonable doubt for the jury.

### Multiplicitous Charges

The standard of review on questions of multiplicity is plenary. *State v. Vontress*, 266 Kan. 248, 255, 970 P.2d 42 (1998).

In order to convict Thomas of injury to a pregnant woman, the State had to prove that Thomas committed an underlying felony causing C.B. to suffer a miscarriage. K.S.A. 21-3440. The State used aggravated battery as the underlying felony to support the conviction of injury to a pregnant woman. Thomas was also separately charged with and convicted of aggravated battery. The State did not allege or prove two separate and distinct acts of battery but relied on the facts of the aggravated battery charge to prove the injury to a pregnant woman charge. Thomas argues the prohibition against double jeopardy prevents the State from using a single wrongful act as the basis for multiple convictions.

Thomas did not argue to the trial court that the convictions were multiplicitous. When constitutional grounds are asserted for the first time on appeal, they are not properly before the appellate court for review. *State v. Shears*, 260 Kan. 823, 837, 925 P.2d 1136 (1996). There are three exceptions to the general rule. One of those exceptions is whether there is a question that must be considered in order to serve the ends of justice or to prevent a denial of fundamental rights. *State v. Mincey*, 265 Kan. 257, 267, 963 P.2d 403 (1998).

In *State v. Dubish*, 234 Kan. 708, 675 P.2d 877 (1984), the Kansas Supreme Court faced an issue of multiplicity raised for the first

time on appeal. The court noted the exception stated above and decided to address the issue on the merits. It relied on the reasoning of a prior Kansas case:

"The issue of multiplicity was considered in *State v. Dorsey,* 224 Kan. 152, 578 P.2d 261 (1978). The court stated the principal danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense. 224 Kan. at 154-55. The fundamental right of a defendant to a fair trial under the 5th and 14th Amendments to the Constitution of the United States would be violated by a multiplicitous conviction." 234 Kan. at 718.

Therefore, the merits of Thomas' multiplicity issue are addressed below.

K.S.A. 21-3107 allows charging a defendant with multiple violations arising from a single transaction when the same conduct may establish the commission of more than one crime. The test concerning whether a single transaction may constitute two separate and distinct offenses is whether the same evidence is required to sustain each charge. If not, the fact that both charges relate to and grow out of the same transaction does not preclude convictions and sentences for both charges. *Vontress,* 266 Kan. at 256.

Convicting a defendant for multiplicitous crimes is prohibited by K.S.A. 21-3107. An individual may be convicted of either the crime charged or an included crime, but not both. An included crime may be "a crime necessarily proved if the crime charged were proved." *City of Wichita v. Edwards,* 23 Kan. App. 2d 962, 972, 939 P.2d 942 (1997).

To determine whether convictions are multiplicitous, we start with *State v. Fike,* 243 Kan. 365, 757 P.2d 724 (1988), where the court set forth a two-pronged analysis to examine lesser included offenses. The *Fike* test was expanded to include multiplicity in *State v. Warren,* 252 Kan. 169, 175-76, 843 P.2d 224 (1992). The first step is to determine whether all of the statutory elements of the lesser crime are among the statutory elements required to prove the greater crime. If so, then the lesser crime is a lesser included offense of the greater crime.

Under the second prong of *Fike,* if the factual allegations of the charging document and the evidence required to be adduced at

trial to prove these allegations would also necessarily prove the lesser crime, then multiplicity applies. Thomas argues that there was only one overt act of force or violence, and the facts only support one charge.

In *State v. Fritz,* 261 Kan. 294, Syl. ¶ 4, 933 P.2d 126 (1997), the court found that the test to determine whether the charges in a complaint or information are multiplicitous is whether each offense requires proof of an element not necessary to prove the other offense. If so, the charges stemming from a single act are not multiplicitous.

In the case at hand, aggravated battery is an underlying felony which is an element of injury to a pregnant woman. Aggravated battery does not require proof of an element not necessary to prove the other offense. Under this test, the charges are multiplicitous.

This case is very similar to *City of Wichita v. Edwards,* 23 Kan. App. 2d 962, 939 P.2d 942 (1997). In *Edwards,* an ethnic intimidation ordinance required proof of a violation of one or more enumerated underlying ordinances. Edwards was convicted of battery, disorderly conduct, and ethnic intimidation. The court held that since violation of the battery and disorderly conduct ordinances were required at trial to prove ethnic intimidation, the convictions were multiplicitous. *Edwards,* 23 Kan App. 2d at 973. Applying this precedent to the case at hand, Thomas' conviction of aggravated battery, which was required to prove the crime of injury to a pregnant woman, is multiplicitous. If there was clear legislative intent that the purpose of the injury to a pregnant woman statute was to protect the fetus, then the convictions would not be multiplicitous. However, we have been unable to find such a clear legislative intent in our research of the legislative history of the statute.

Having determined that the convictions of injury to a pregnant woman and aggravated battery are multiplicitous, we need not address Thomas' argument relating to merger of the offenses.

### Prosecutorial Misconduct

Thomas testified in his own behalf and stated that he was at home asleep at the time of the battery. The State then tried to

impeach Thomas' credibility and asked Thomas if he invoked his right to an attorney. Thomas argues that in soliciting testimony that he invoked his *Miranda* rights, the State committed prosecutorial misconduct and denied him his right to a fair trial.

Thomas contends the State impermissibly elicited testimony about the defendant's silence following *Miranda* warnings in violation of *Doyle v. Ohio,* 426 U.S. 610, 618, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). *Doyle* held a prosecutor may not use a defendant's silence after receiving *Miranda* warnings to impeach his exculpatory story at trial. *Doyle,* 426 U.S. at 610. Kansas adopted *Doyle* in *State v. Mims,* 220 Kan. 726, 556 P.2d 387 (1976).

In *State v. Edwards,* 264 Kan. 177, 195, 955 P. 2d 1276 (1998), the Kansas Supreme Court stated:

> "It is constitutionally impermissible for the State to elicit evidence at trial of an accused's post-*Miranda* silence. *Doyle v. Ohio,* 426 U.S. 610, 618, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976); *State v. Gadelkarim,* 256 Kan. 671, 685, 887 P.2d 88 (1994). A *Doyle* violation occurs when the State attempts to impeach a defendant's credibility at trial by arguing or by introducing evidence that the defendant did not avail himself or herself of the first opportunity to clear his or her name when confronted by police officers but instead invoked his or her constitutional right to remain silent. *State v. Brinkley,* 256 Kan. 808, 820, 888 P.2d 819 (1995)."

There are three factors which the Kansas courts have considered to determine whether a new trial should be granted based on prosecutorial misconduct: (1) Was the misconduct so gross and flagrant as to deny the accused a fair trial; (2) do the prosecutor's remarks show ill will on the prosecutor's part; and (3) is the whole evidence against the defendant so overwhelming that there was little or no likelihood the prosecutor's prejudicial remarks changed the result of the trial? *State v. Follin,* 263 Kan. 28, 45, 947 P.2d 8 (1997).

In the case at hand, the State was attempting to impeach Thomas on his testimony regarding what he told police on the night of the battery. In doing so, it committed prosecutorial misconduct by asking if Thomas asked for his attorney. The State's attorney conceded as much at oral argument. However, the error was harmless. The behavior was not gross and flagrant; rather, the State went too far in impeachment questioning. The State did not show ill will. The comments were not emphasized in the closing statements. Further,

the physical evidence supports the victim's version of events. The prejudicial remarks were not likely to have much weight in the minds of the jurors.

Reversed and remanded for new trial.