NOT DESIGNATED FOR PUBLICATION

No. 113,653

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHN SAMPSON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed September 9, 2016. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., HILL and ATCHESON, JJ.

ATCHESON, J.:  After an evidentiary hearing, the Sedgwick County District Court denied John Sampson relief on a habeas corpus motion that alleged his appointed lawyer had inadequately represented him in a jury trial resulting in his convictions for felony murder, aggravated robbery, and aggravated burglary. Sampson contends the district court should have found the lawyer's performance constitutionally deficient for failing to properly preserve an alibi defense and for failing to file a pretrial motion to suppress statements he gave police. We conclude the purported deficiencies neither influenced the

1

jury verdicts nor materially prejudiced Sampson in some other way, and we, therefore, affirm the district court.

The jury convicted Sampson in February 2009. The trial evidence showed that Sampson and his son Corey Logan forced their way into an apartment in Wichita in 2007 in the hopes of taking a large amount of cash and marijuana. Joey Smith, the son of Sampson's then-girlfriend, waited for them in Sampson's truck. According to the evidence, Sampson intended to use the money and drugs to settle a debt. Logan testified that Sampson beat and then shot a man who lived in the apartment. The man died from those injuries. Smith testified that when Sampson returned to the truck, he said he had shot someone. After the three returned to Sampson's house, they disposed of their clothing, a handgun, and other potential evidence.

During trial, the State also called as a witness Sampson's girlfriend at the time of the crime. The two were also coworkers at a Wichita manufacturing company. At trial, the woman testified she ran into Sampson at work the day of the crime and described him as "looking pretty stressed out," pale, and shaking. She went on to explain that Sampson then told her he had killed someone.

The State called a Wichita police department detective who, along with a second officer, interviewed Sampson twice in November 2007. During the first interview, Sampson said he knew about the break-in and murder but was not involved. He identified Logan, Smith, and Smith's brother as the culprits. In the second interview, Sampson admitted he drove Logan and Smith to the apartment but claimed he waited outside the entire time. We discuss the circumstances of the interviews later in connection with the point Sampson has raised on appeal.

Sampson neither testified in his own defense nor called any other witnesses. The jury convicted Sampson of felony murder, aggravated robbery, and aggravated burglary.

2

The district court later sentenced Sampson to life in prison with no parole for at least 20 years plus a consecutive sentence of 120 months. The Kansas Supreme Court considered Sampson's direct appeal and found no trial errors warranting reversal of the convictions. *State v. Sampson*, 297 Kan. 288, 301 P.3d 276 (2013).

Sampson then timely filed a motion for habeas corpus relief, as provided in K.S.A. 60-1507, on the grounds his trial lawyer's representation was constitutionally deficient thereby violating his right to counsel protected in the Sixth Amendment to the United States Constitution. The district court appointed a new lawyer to represent Sampson on his 60-1507 motion. After hearing testimony from Sampson and his trial lawyer and considering other evidence, including the record compiled in the criminal case, the district court denied Sampson's motion. Sampson has appealed the ruling, and that is what we have in front of us.

When reviewing the denial of a 60-1507 motion after a full evidentiary hearing, an appellate court accepts the district court's findings of fact to the extent they are supported with substantial competent evidence. The appellate court exercises unlimited review of the determinative legal issues. *Bellamy v. State*, 285 Kan. 346, 355, 172 P.3d 10 (2007).

To demonstrate constitutionally ineffective assistance of the lawyer handling his criminal case in the district court, Sampson must show the representation fell below an objective standard of reasonableness resulting in legal prejudice, meaning there probably would have been a different outcome had the representation been adequate. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see *Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3, 4, 694 P.2d 468 (1985) (adopting and stating *Strickland* test for ineffective assistance); see also *Haddock v. State*, 282 Kan. 475, 512-13, 146 P.3d 187 (2006) (stating *Strickland* test and *Chamberlain* standard of review). In short, Sampson must identify both substandard lawyering and resulting legal prejudice. As the United States Supreme Court and the Kansas Supreme Court have

3

noted, review of the representation should be deferential and hindsight criticism tempered lest the evaluation of a lawyer's performance be unduly colored by lack of success notwithstanding demonstrable competence. See *Strickland*, 466 U.S. at 689-90; *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011). Rarely should counsel's representation be considered substandard when he or she investigates the client's circumstances and then makes a deliberate strategic choice among multiple options. *Strickland*, 466 U.S. at 690-91.

In general, the courts look at a lawyer's overall performance in representing a criminal defendant in determining whether the Sixth Amendment right to counsel has been satisfied, meaning that a minor mistake or even a number of minor mistakes do not breach that duty. See *Harrington v. Richter*, 562 U.S. 86, 110-11, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); *Kimmelman v. Morrison*, 477 U.S. 365, 386, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986); *Bland v. Hardy*, 672 F.3d 445, 450 (7th Cir. 2012) ("[T]he question under *Strickland* is not whether the lawyer made a mistake, even a serious one; it is whether the lawyer's *overall* performance was professionally competent."). But a single error causing sufficiently substantial legal harm to the defendant to call into question an adverse outcome at trial or on appeal will suffice. See *Miller v. State*, 298 Kan. 921, 938-39, 318 P.3d 155 (2014) (applying *Strickland* test to error by lawyer handling direct criminal appeal).

As we have indicated, Sampson identifies on appeal two ways he says his trial lawyer's representation fell below the constitutionally required standard and materially influenced the jury to find him guilty. We first take up the alibi defense and then the admissibility of his statements to the Wichita police, adding facts as necessary.

As provided in K.S.A. 22-3218, a defendant who "proposes to offer evidence" supporting an alibi defense must serve a written notice on the State at least 7 days before trial stating "where defendant contends he was at the time of the crime[.]" The notice

must also contain the names of witnesses the defendant intends to call in support of the alibi. Defendants need not file notices if their only evidence of alibi will be their own testimony. K.S.A. 22-3218(1). The State is then obligated to file a reciprocal notice identifying witnesses it may call to rebut the alibi. The statute does not speak to disclosure or exchange of documentary evidence related to an alibi. If a defendant fails to give statutorily sufficient notice, K.S.A. 22-3218(4) directs that he or she "shall not be permitted to offer evidence to the effect he [or she] was at some other place at the time of the crime charged."

The break-in occurred sometime before 1:30 a.m. on July 10, 2007. *Sampson*, 297 Kan. at 290. Sampson's trial lawyer did not file an alibi notice. At trial, the lawyer intended to rely on three documents the district court admitted as evidence: (1) A timesheet from Sampson's job that seems to show he clocked in at 8:25 p.m. on July 9, 2007, and clocked out at 12:57 a.m. on July 10; (2) an e-mail sent from Sampson's work station at 2:47 a.m. on July 10; and (3) a second e-mail sent from the work station at 3:15 a.m. The timesheet did not show Sampson clocking back in. The trial lawyer offered the timesheet as a defense exhibit during his cross-examination of the detective who obtained it from Sampson's employer. The State offered the e-mails as exhibits.

The lawyer wanted to argue to the jury that the documents indicated Sampson had been at work when the crime happened. The State objected during the closing argument on the grounds Sampson had failed to give notice of an alibi defense. In a bench conference, the district court noted that the documents had been admitted as evidence. But the district court prohibited Sampson's trial lawyer from arguing the documents indicated Sampson had an alibi.

At the 60-1507 hearing, Sampson's trial lawyer testified that he concluded he did not need to file an alibi notice because he intended to call no witnesses on the point and that the purpose of the documents was to demonstrate that the State's witnesses had

5

conspired to frame Sampson. The district court ruled Sampson's trial lawyer had offered a reasoned strategic decision for not filing the notice. Therefore, according to the district court, the trial lawyer's representation was constitutionally sufficient in that respect.

The district court's conclusion seems less than fully satisfactory. First, the language of K.S.A. 22-3218(1) fairly clearly requires a defendant to file an alibi notice unless the only evidence he or she offers to support the defense will be his or her own testimony. Granted, nobody has found an appellate court decision holding that a defendant has to file a notice if he or she intends to offer only documentary evidence of an alibi. But the statute does not especially lend itself to that interpretation. Nor would that reading be consistent with the purpose of giving notice.

The accuracy of an alibi is difficult to challenge without forewarning of the place the defendant claims to have been. That is true whether the supporting defense evidence comes from witnesses or documents—say, a certified copy of a parking ticket for the defendant's car on the day of the crime in a far distant city. The parking ticket would be circumstantial evidence supporting an alibi suggesting the defendant to have been in that city with the car. But the defendant might have loaned his or her car to someone else or might have parked the day before and returned to the place of the crime by bus, commercial airline, or some other means. Those possibilities would take time to investigate, hence the requirement for advance notice.[*]

[*]The exception to the notice requirement for a defendant's own testimony as the sole evidence supporting an alibi has at least a couple of policy justifications. First, advance notice arguably intrudes upon the right against self-incrimination protected in the Fifth Amendment to the United States Constitution. A demonstrably false alibi would be highly incriminating. Second, a defendant's exculpatory testimony—whether about an alibi or some other defense—is inherently vested with self-interest and may be carefully scrutinized by jurors for that reason alone. See *Johnson v. State*, No. 109,169, 2014 WL 1362929, at *8 (Kan. App. 2014) (unpublished opinion); *Bell v. State*, 284 Ga. 790, 794-95, 671 S.E.2d 815 (2009) (noting "the self-evident fact" that a criminal defendant's interest in outcome of case bears on credibility); *People v. Barney*, 176 Ill. 2d 69, 73, 678

6

N.E.2d 1038 (1997) ("The notion that the possibility of conviction may color a defendant's testimony is so basic, so rooted in common experience and human nature, that it would be taken into account by the jurors whether the prosecutor mentioned it or not."); *State v. Hobbs*, 713 N.W.2d 884, 887 (Minn. App. 2006) (prosecutor may point out defendant's interest in outcome of case in arguing credibility to jury).

We are disinclined to say that a dubious interpretation of a statute with particular importance in a given case plainly amounts to a strategic decision insulated from habeas corpus review. See *State v. Cheatham*, 296 Kan. 417, 443-45, 292 P.3d 318 (2013) (defense lawyer's conduct at trial may be deemed ineffective where proffered strategic explanation could be characterized as something between "a misunderstanding of the law" and simply "nonsensical"). The trial lawyer's misinterpretation of the alibi notice statute probably should not be written off as a legitimate strategic determination. *Cf. State v. Thomas*, 26 Kan. App. 2d 728, 732, 993 P.2d 1249 (1999) (trial counsel's performance "unreasonable" for failing to file notice of alibi when a family member of defendant would have testified in support of claim), *aff'd* 270 Kan. 17, 11 P.3d 1171 (2000).

Second, even assuming Sampson's trial lawyer actually wanted to offer the documents to establish some conspiracy against Sampson, they would only do so if they tended to show that Sampson did not participate in the break-in. And, in turn, they would do that only if they indicated he had been at work then. So the documents would necessarily support an alibi within the meaning and requirements of K.S.A. 22-3218. That is to say, the conspiracy theory and an alibi defense were so inextricably linked as to be inseparable. Both depended on and would be furthered only by the accuracy of the documents.

We, therefore, assume without deciding that Sampson's trial lawyer fell below the standard of care required in *Strickland* by failing to give notice of an alibi in conformity with K.S.A. 22-3218, at least to the extent the claim depended upon the timesheet offered and admitted as a defense exhibit. No one has suggested that Sampson should be excused

from the notice requirements of K.S.A. 22-2318(1) because the alibi argument either rested, in part, on evidence the State introduced or could have been presented from that evidence alone. That is, the e-mails the State offered as evidence indicated Sampson may have been at work about 2 hours after the crime. And K.S.A. 22-2318 applies when the defense offers evidence of an alibi. We need not and do not explore that possibility.

In any event, Sampson must also demonstrate material prejudice to obtain habeas corpus relief. His challenge falters on that requirement.

The jurors got to review the documents during their deliberations, and his trial lawyer pointed them out during closing argument. The trial lawyer simply couldn't connect the dots for the jurors. More importantly, perhaps, the documents did not create an especially strong alibi. Assuming the jurors accepted them for what they purport to represent, they merely bracket the time of the crime by a fairly wide margin. In other words, they, at best, showed Sampson was at work and left before the crime and returned sometime afterward. They created roughly a 2-hour window during which Sampson was gone from work and during which the break-in took place. Sampson has presented no evidence to suggest it would have been unlikely, let alone impossible, for him to have had time to participate in the break-in if he left work just before 1 a.m. and returned about 2:45 a.m. In short, the alibi is vulnerable on its face.

In addition, of course, there was overwhelming evidence implicating Sampson in the break-in. Testimony from both Logan and Smith placed Sampson at the center of the crimes. The testimony of his former girlfriend as to his admission to her was highly incriminating. Finally, of course, the jury heard from the police detective that Sampson implicated himself. As we discuss momentarily, Sampson has failed to present a valid argument that his own statements should have been excluded as evidence at trial. Accordingly, the trial record strongly supports the jury's verdicts of guilty. Any lawyer

8

error limiting the presentation of the weak alibi defense did not materially contribute to that outcome.

For his other point on appeal, Sampson contends his trial lawyer should have challenged the admissibility of the statements he gave the law enforcement officers in November 2007, particularly the second one in which he directly implicated himself in at least assisting in the break-in and the resulting homicide. By way of background, the record indicates Sampson was being held temporarily at the state prison in Hutchinson when he met with the detectives. It is undisputed that Sampson had requested a meeting with law enforcement agents to share information he had about the break-in and homicide. Sampson apparently hoped to leverage that information for favorable treatment of other criminal issues he faced. Details about those issues are not immediately apparent from the record.

Basically, Sampson says he suffers from bipolar disorder, and he was not given his usual medications at the prison when he spoke to the detectives. He faults his trial lawyer for not investigating his mental state at the time the detectives questioned him. At the 60-1507 hearing, Sampson testified he felt as if he were on "a roller coaster" during the period he spoke with the detectives and agreed he was "having extreme ups and downs."

A confession given law enforcement officers should be excluded as evidence if the defendant did not act freely and voluntarily. The ultimate issue is whether the statements reflect the product of a free and independent will, *i.e.*, did the individual act voluntarily? See *State v. Gilliland*, 294 Kan. 519, Syl. ¶¶ 3, 4, 276 P.3d 165 (2012); *State v. Stone*, 291 Kan. 13, 21, 237 P.3d 1229 (2010); *State v. Shumway*, 30 Kan. App. 2d 836, 841-42, 50 P.3d 89, *rev. denied* 274 Kan. 1117 (2002). In short, on a motion to suppress, the district court must examine the totality of the circumstances surrounding the making of the statements. Among the factors to be considered in assessing voluntariness are: "(1) the accused's mental condition; (2) the duration and manner of the interrogation; (3) the

9

ability of the accused on request to communicate with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language." *Gilliland*, 294 Kan. 519, Syl. ¶ 3; see *Stone*, 291 Kan. at 21. A government agent may induce an involuntary statement through improper threats of harm, promises of benefit, a combination of the two, or other undue influence over the suspect. *Hutto v. Ross*, 429 U.S. 28, 30, 97 S. Ct. 202, 50 L. Ed. 2d 194 (1976); *State v. Brown*, 286 Kan. 170, 174, 182 P.3d 1205 (2008). If a law enforcement officer exploited a suspect's mental illness or infirmity, a district court could properly exclude the resulting statement. See *United States v. Preston*, 751 F.3d 1008, 1024 (9th Cir. 2014).

Similarly, the State may be barred from introducing a defendant's statement given law enforcement officers during a custodial interrogation if the defendant could not understand a *Miranda* advisory or voluntarily waive his or her *Miranda* rights. The general factors guiding the determination of whether a defendant understood and knowingly waived those rights before speaking with law enforcement officers are the same as those bearing on the voluntariness of the resulting statement. *State v. Mattox*, 280 Kan. 473, Syl. ¶ 3, 124 P.3d 6 (2005); *State v. Paulson*, No. 108,795, 2015 WL 6444314, at *23 (Kan. App. 2015) (unpublished opinion), *rev. denied* 304 Kan. ___ (April 21, 2016).

Again we assume without deciding both that Sampson's trial lawyer failed to investigate the status of Sampson's mental health and specifically his bipolar condition in November 2007 and that the failure amounted to constitutionally deficient representation. Sampson has presented no evidence in support of his 60-1507 motion that he incurred material prejudice as a result. At the hearing, Sampson simply testified that he was on what he described as an emotional roller coaster when he spoke with the detectives. He did not testify that he failed to understand what the detectives were saying to him or that he felt compelled for any reason to answer their questions. Sampson, of course, initiated

10

contact with the police in hopes of securing a deal on another criminal matter, suggesting he was in command of his faculties. The detectives did not seek Sampson out and press themselves on him.

Moreover, Sampson offered no testimony at the 60-1507 hearing from a psychiatrist or psychologist to the effect that he likely was in such a decomposed mental state in November 2007 that he could not comprehend what was going on or could not have exercised sufficient free will to cut off any questioning. Nothing in the record developed during the criminal case or in support of the 60-1507 motion suggests any valid grounds for suppressing Sampson's statements. Accordingly, even if Sampson's trial lawyer had filed a motion to suppress those statements before trial, the motion would have been denied. Sampson can show no prejudice, since the trial evidence would have been unchanged.

Having reviewed the issues Sampson has raised on appeal, we find no error in the district court's ultimate conclusion in denying the 60-1507 motion.

Affirmed.

11