IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,638

STATE OF KANSAS,
*Appellee*,

v.

HENRY SULLIVAN,
*Appellant.*


SYLLABUS BY THE COURT


1.

A defendant has a constitutional right to be present during critical stages of a criminal proceeding; that right emanates from the Sixth Amendment right to confront witnesses and from the right to due process guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution. In Kansas, a defendant in a felony case also possesses a statutory right to be present at every stage of the criminal trial, except as otherwise provided by law.


2.

The rules governing the Confrontation Clause of the Sixth Amendment to the United States Constitution established in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), are not applicable to a statement made by the defendant because the point of requiring the availability of the declarant for cross-examination is to provide the defendant an opportunity to cast doubt on the statement's value for truth.

3.

When a defendant is present in open court at the time an exhibit that consists of video recordings of defendant's interrogation by law enforcement officers is offered and admitted into evidence; the defense has stated in open court that it had no objection to the content of the exhibit; and the defense counsel declared that it intended to use the exhibit's content to cross-examine the interrogating detectives, the district court's providing the exhibit to the jury during deliberations without first publishing the entire recording in open court does not violate the defendant's right to be present at all critical stages of the trial.

4.

When the foundation for an exhibit that consists of video recordings of defendant's interrogation by law enforcement officers is established in open court; the exhibit is offered and admitted in open court; the defense advises in open court that it has no objection to the content of the exhibit; a portion of the audio content of the exhibit is played to the jury in open court; the defense does not attempt to supplement the publication of the video recording in open court; and the defense is provided the opportunity to use any or all of the exhibit's content to cross-examine the State's witnesses in open court, the defendant's right to a public trial has not been violated when the exhibit is provided to the jury to view during deliberations without first publishing the entire recording in open court.

5.

The use of a person's prior convictions to enhance his or her sentence in the current case, without having proved those convictions to a jury beyond a reasonable doubt, does not violate the Sixth Amendment to the United States Constitution.

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 12, 2016. Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed April 6, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Ethan Zipf-Sigler*, assistant district attorney, argued the cause, and *Sheryl L. Lidtke*, chief deputy district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: A jury convicted Henry Sullivan of multiple counts of rape and aggravated criminal sodomy, together with one count of aggravated robbery, arising out of separate attacks on three different women, occurring between 2008 and 2010. During the consolidated trial, the State offered, and the district court admitted, DVDs containing approximately six hours of law enforcement's video recording of Sullivan in the interrogation room. The DVDs were not played for the jury in open court, but the jury was permitted to take the exhibits into the jury room during deliberations. Sullivan appealed, claiming that the district court's handling of law enforcement's video recording violated his constitutional and statutory rights to be present at all critical stages of his trial and violated his constitutional right to a public trial with an impartial judge. He also claimed that the district court unconstitutionally considered his prior convictions to enhance his sentence. The Court of Appeals affirmed his convictions and sentence, finding no reversible constitutional or statutory violations. *State v. Sullivan*, No. 112,638, 2016 WL 563000 (Kan. App. 2016) (unpublished opinion). We granted Sullivan's petition for review. We reach the same result as the Court of Appeals.

3

Given the procedural nature of Sullivan's appellate claims, we do not need to recite a detailed description of his criminal acts. Generally, he accosted T.H. as she was walking in the early morning hours of June 13, 2008, and forced her behind a building, where he forcibly sodomized, raped, and robbed her. On December 22, 2009, J.D. was walking in Kansas City on a cold and slick afternoon, when Sullivan offered her a ride home in his automobile. Instead of taking her home, Sullivan parked at a secluded bridge, where he sodomized J.D. in various ways and raped her. The following year, on December 10, 2010, S.H. was walking in the early morning hours, when Sullivan grabbed her and pulled her behind a store. There, he forced her to orally sodomize him before he raped her.

Sexual assault kits were performed on all three women that produced DNA profiles of an unknown male. The data was entered into CODIS, a combined DNA indexing system. A match was not discovered until October 2011, when the DNA from S.H.'s sexual assault kit was linked to Sullivan. Detective Michael Lucas was assigned to investigate, and he obtained an oral swab from Sullivan for DNA comparison.

In January 2012, two more CODIS hits pointed to Sullivan as a suspect in the T.H. and J.D. sexual assaults. Both of those victims picked Sullivan out of a photographic line-up as their assailant. DNA from Sullivan's oral swab matched the DNA found on the victims in all three cases.

Sullivan was arrested in the late morning of February 2, 2012, and transported to the Kansas City detective bureau, where he was left in Detective Lucas' custody. Detective Danon Vaughn assisted Detective Lucas in interviewing Sullivan. Sullivan

signed an advice of rights form at 1:23 p.m. At various times, the detectives employed both audio and video recordings. Sullivan's first audio recorded statement started at 2:37 p.m.

After the audio recording began, Captain William Howard texted Detective Vaughn and instructed him to begin a video recording, which appears to have begun roughly 12 minutes into the audio recording. The video recording then runs continuously for several hours, including the periods during which Sullivan was alone in the interrogation room, ending when a uniformed officer pats down Sullivan and handcuffs him.

During the first audio recording, Sullivan admitted to sexual contact with each of the three victims but claimed the contact was consensual. During a second audio-recorded statement, commenced after Sullivan had been further interrogated, Sullivan's version of events was more incriminating, especially with respect to the incidents involving T.H. and S.H. Then, toward the end of the second audio-recorded statement, Sullivan indicated that he needed help because he did not always make the best decisions.

At trial, the State admitted the two audio-recorded statements into evidence and played them for the jury in open court. Sullivan requested to be excused from the courtroom during the playing of those statements. Upon obtaining a waiver of the right to be present during all critical stages of the proceedings from both Sullivan and his attorney, the trial court granted the request; Sullivan was not present in open court when the audio-recorded statements were played for the jury.

While questioning one of the detectives, the prosecutor proffered the DVDs containing the entire video recording of Sullivan's time in the interrogation room from and after Captain Howard's directive to start the video. The following colloquy occurred:

5

"MS. LIDTKE [THE PROSECUTOR]: All right. Judge, I'd move to admit Exhibit 40.

"MS. MCBRATNEY [DEFENSE COUNSEL]: Can we approach, Judge?

"THE COURT: Yes. (Thereupon, the following proceedings were had at the bench by court and counsel out of the hearing of the jury.)

"MS. MCBRATNEY: I'm just curious, is the State going to publish this to the jury?

"MS. LIDTKE: I'm going to ask it be admitted. It's about six hours long at least. I am not going to ask that it be published. I'm going to let them take it back in deliberations and if they want to watch it, they can.

"THE COURT: Okay. I was wondering the same, are we going to have to do this again, move him in and out, but go ahead.

"MS. MCBRATNEY: How does this court handle if the jury wants to watch something that wasn't watched on the record, are we going to have to come back and watch it on the record?

"THE COURT: No. No. They will be—if this goes in, they'll be given this disk. That TV will go in with them or whatever we need so they can play anything and everything. And it's basically, for example, I would equate it to a picture maybe a witness identified but was not published, but it was admitted, then they can still review it back there. This would go with it and they would be free to watch it, not watch it, the whole thing, watch it five times. There is that case that says that, you know, there's certain ways that you would have to bring that back in. If the exhibit goes in, this court does not believe that everybody has to be present if they wanted to watch it.

6

"MS. MCBRATNEY: Okay. Is there any case law that talks about if the jury would just watch a portion or the whole thing or no?

"THE COURT: No. And the reason I believe there isn't because we're not, you know, to quiz the jury on what they've watched and what they don't. There are certain rules about what you can ask jurors afterwards.

"MS. MCBRATNEY: Yeah. And I'm going to be able to fully cross-examine this detective on whatever I want since they have the video to back up what he does or doesn't say, okay.

"THE COURT: Yes.

"MS. MCBRATNEY: Okay.

THE COURT: That is a good question. This sounds like it's the entire statement of Lucas, Vaughn and then Vaughn's statement, and am I right—

"MS. LIDTKE: Just to be clear, it's only the last half of the statement was Lucas.

"THE COURT: Okay.

"MS. LIDTKE: But then the entire part from there until the end.

"THE COURT: What we normally record—talk about the non recorded part.

"MS. LIDTKE: Right.

"THE COURT: It's on this?

"MS. LIDTKE: Yes.

"THE COURT: Okay.

7

"MS. MCBRATNEY:  Okay. Well, I'm going to object, but I'm going to respect the court's ruling I think just because it is a unique situation.

"THE COURT:  Well, your objection will be respectfully overruled and it will be admitted.

"MS. LIDTKE:  Okay. Thank you."

After the video recording was admitted, defense counsel began to cross-examine Detective Vaughn about its content but paused to request a bench conference. At that conference, defense counsel asked if the video discussed uncharged conduct. The prosecutor responded that she did not believe so, but that the defense had been provided a copy of the DVDs approximately six months earlier. Defense counsel explained that she had looked at the video "way back then" and wanted to review it before continuing with her questioning. The trial judge granted that request.

The following day, defense counsel told the court that she had reviewed the video recordings and that she did not see anything objectionable in them. The court responded, "Thank you. And I was going to cover that at the close, but thank you. That way there can't be any issue if it goes to the jury—," to which defense counsel responded by stating "Right." Defense counsel did not ask to further examine either detective and did not request that the DVDs be published to the jury.

The trial court permitted the DVDs to be available to the jury during deliberations, albeit nothing suggests that the jury viewed all of the DVDs, given that the jury completed its deliberations in approximately two-and-one-half hours and the video recording was approximately six hours long.

Sullivan filed a motion for new trial alleging *inter alia* that the trial court erred "in allowing the 6 hour video of the Defendant's confession to be entered into evidence." The motion provided no additional argument or authority on this point, and defense counsel made no argument at the motion hearing on this issue. The district court denied the motion.

During sentencing, Sullivan was allowed to voluntarily absent himself while anyone was speaking on behalf of the State, including victims, victims' advocates, and police officers. Ultimately, the district court sentenced Sullivan to 570 months' imprisonment.

The Court of Appeals affirmed Sullivan's convictions and sentence. While acknowledging that a violation of a defendant's constitutional right to a public trial is structural error, not subject to the invited error doctrine, the panel found no such violation in this proceeding. Rather, the panel opined that "[t]he fundamental purposes of the Sixth Amendment right to public trial were served" in this case. 2016 WL 563000, at *3.

Further, the panel rejected Sullivan's claim that he was denied the right to be present at all critical stages of the prosecution, when the DVDs were given to the jurors for deliberations. The panel noted that Sullivan was present at all times when the DVDs were discussed with the district court, and a defendant's right to be present does not extend to jury deliberations. But the panel went on to opine that, even if the right to be present meant that the DVDs had to be played in open court with the defendant present before the jury could have them for deliberations, such an error would have been harmless beyond a reasonable doubt in this case for two reasons. First, Sullivan waived his right to be present and requested to be excused from the courtroom when the audio-

9

recorded statements were played in open court, suggesting that Sullivan would have done the same if the State had published the DVDs which replicated most of the content of the audio recordings. Second, the content of the DVDs was fixed; the content was known to the defense; and the defense had specifically advised the trial court it had no objection to the content of the DVDs. Sullivan's presence would not have added to or detracted from that fixed evidence, meaning that the outcome of the trial would have been no different. 2016 WL 563000, at *3-4.

On the sentencing issue, the panel followed this court's precedent in *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 (2002), which found that Kansas' use of prior convictions in determining a presumptive statutory punishment does not run afoul of the Sixth and Fourteenth Amendments to the United States Constitution.

This court granted Sullivan's petition for review.

ADMISSION OF VIDEO-RECORDED STATEMENTS OF DEFENDANT
WITHOUT PUBLICATION OF THE RECORDING IN OPEN COURT

Sullivan argues that the district court's allowing the jurors' access during their deliberations to the DVDs containing his video-recorded statements to law enforcement officers without first publishing the content of the DVDs in open court violated his rights in two ways. First, it violated his right to be present at all critical stages of his trial, which is constitutionally guaranteed by the Fourteenth Amendment to the United States Constitution and statutorily required in this state by K.S.A. 22-3405(1). Second, it violated his Sixth Amendment constitutional right to a trial at which the trial judge is present and which is open to the public at all critical stages.

10

*Standard of Review*

When an appellant claims a violation of the right to be present at every critical stage of the trial, a violation of the right to a public trial, and/or a violation of the right to an impartial judge, we employ a de novo standard of review. *State v. Bolze-Sann*, 302 Kan. 198, 215, 352 P.3d 511 (2015).

*Analysis*

*Right to be present*

"A defendant has a constitutional right to be present during critical stages of a criminal proceeding. That right emanates from the Sixth Amendment right to confront witnesses and from the right to due process guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution. [Citations omitted.]" *State v. Davis*, 284 Kan. 728, 731, 163 P.3d 1224 (2007). See also *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987) ("[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."); *Illinois v. Allen,* 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353, *reh'g denied* 398 U.S. 915 (1970) ("One of the most basic of the rights guaranteed by the [Sixth Amendment] Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial."); K.S.A. 22-3405(1) ("The defendant in a felony case shall be present . . . at every stage of the trial . . . except as otherwise provided by law.").

Sullivan contends that, when the DVDs were sent to the jury room without having been published in open court, it was tantamount to the State presenting evidence to the jury outside the presence of the defendant. For support, Sullivan cites to *State v. Herbel*,

11

296 Kan. 1101, 1106-07, 299 P.3d 292 (2013), where we found a violation of defendant's constitutional and statutory right to be present at every critical stage of the trial when the trial court allowed a deliberating jury to join the judge and prosecutor in the courtroom to view a requested video without the defendant being present. The defendant's initial premise is faulty and *Herbel* is distinguishable.

The evidence was not presented to the jury at the time it may have viewed the DVDs in the jury room. The State had already proffered the evidence in open court. The defense was allowed to make its objections to that proffer in open court. After being permitted time to review the content of the proffered evidence, the defense counsel, in open court with the defendant present, announced to the trial court that the defense had no objection to the content of the exhibit and acknowledged that there would be no problem presenting the evidence to the jury. Further, the defense then had access to the content of the DVDs to use in the cross-examination of the detectives. In fact, although defense counsel quickly terminated her cross-examination of Detective Vaughn, she inquired in front of the jury (with defendant present), "So that videotape would be the best indicator, would it not, of what statements were made between you and my client and things of that nature; is that right?" Thus, Sullivan had ample opportunity to confront the detectives who were depicted on the DVDs, and the Confrontation Clause is not designed to allow a defendant to confront his or her own statements. See *State v. Richardson*, No. COA08-788, 2009 WL 678466, at *5 (N.C. App. 2009) (unpublished opinion) ("*Crawford* [*v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)] is not applicable if the statement is that of the defendant because the point of requiring the availability of the declarant for cross-examination is to provide the defendant an opportunity to cast doubt on the statement's value for truth.").

12

Moreover, the defense could have requested the publication of the DVDs or revealed such of the content as it may have wanted through the cross-examination of the detective that had laid the foundation for its admission. Of course, as the Court of Appeals panel astutely noted, it may not have been advantageous for the defense to double down on the content of the audiotapes that had already been played for the jurors. Nevertheless, the point is that the evidence was admitted during the trial, while the defendant was present.

As noted, Sullivan suggests that *Herbel* means that a jury cannot view a video without the defendant being present. That stretches the holding of that case too taut. In *Herbel*, the jury was in the courtroom, on the record, with the judge and prosecutor present, and presumably the proceeding was open to the public. Obviously, that was a critical stage of the proceeding. Here, the jury was in deliberations with no one else being allowed inside the jury room. As the panel noted, secret jury deliberations, by their very nature, cannot be a critical stage of the proceeding at which a defendant is entitled to be present.

What *Herbel* does make clear is that any violation of Sullivan's right to be present at a critical stage of the proceedings is subject to a harmless error analysis. And we agree with the panel here that any error that might be discerned from the district court's handling of the DVDs is harmless beyond a reasonable doubt. *Herbel*, 296 Kan. at 1110 (applying constitutional harmless error standard). First, Sullivan demonstrated, both during trial and at sentencing, that he would not have exercised his right to be present if the DVDs had been played in open court. But more importantly, the audio portions of the video recording, presumably the most critical evidence for the State's case, were played for the jury. In other words, much of the video recording would have been cumulative, as the panel noted. In short, we agree that "the outcome of the trial would have been no different." *Sullivan*, 2016 WL 563000, at *4.

13

Before moving on, we would note that, after Sullivan's crimes had been committed and his trial had been conducted, the Legislature amended K.S.A. 22-3420(c) to read as follows:

> "In the court's discretion, upon the jury's retiring for deliberation, the jury may take any admitted exhibits into the jury room, where they may review them without further permission from the court. If necessary, the court may provide equipment to facilitate review." L. 2014, ch. 102, § 7.

Because we hold Sullivan has not established reversible constitutional or statutory error under the law in effect when his crimes were committed, we need not address whether retroactive application of this amendment would cure any such error. See L. 2014, ch. 102, § 7 ("The amendments to this section by this act establish a procedural rule, and as such shall be construed and applied retroactively.").

*Public trial/Impartial judge*

Sullivan attempts to circumvent a harmless error analysis by characterizing his case on appeal as one that involves the denial of his right to a public trial and his right to an impartial judge. He suggests that those are fundamental rights not subject to harmlessness, which, as the panel below noted, would find support in *State v. Reed*, 302 Kan. 227, 352 P.3d 530 (2015). There, the defendant claimed that his Sixth Amendment right to a public trial had been violated when the district court closed the courtroom to the public to ascertain whether the victim was going to testify. The *Reed* court rejected the Court of Appeals' application of the invited error doctrine because "the claimed constitutional error is structural." 302 Kan. at 238.

14

But Reed did not prevail because he did not present a scenario in which his Sixth Amendment right to a public trial had been violated. Sullivan suffers the same fate; he does not present a circumstance that implicates his right to a public trial.

We would first note that the public was never excluded from Sullivan's trial, and he made no claim to the district court that its proposed handling of the DVDs was somehow going to effectively exclude the public from his trial. Again, the foundation for the exhibit was laid in open court; it was proffered into evidence in open court; the defense advised that it had no objection to the content of the exhibit in open court; and the defense had the exhibit available to cross-examine the State's witnesses in open court. A portion of the content of the exhibit was played for the jury through the audio recordings in open court, and Sullivan never attempted to supplement that publication through cross-examination of the State's witnesses. While the district court's handling of the exhibit may have been unusual, it did not deny Sullivan's right to a public trial.

Moreover, as the panel noted, Sullivan's heavy reliance on *United States v. Noushfar*, 78 F.3d 1442, 1445 (9th Cir. 1996), *amended* 140 F.3d 1244 (9th Cir. 1998), is unavailing, both factually and legally. Factually, in *Noushfar*, tapes were submitted to the jury without publication but, unlike here, the defendant did not get an opportunity to test the evidence in open court. Legally, *Noushfar* was not based on a violation of the right to public trial. Rather, that decision was founded on a violation of the Federal Rules of Criminal Procedure and the Federal Rules of Evidence, as well as a violation of the Confrontation Clause. Obviously, the federal rules do not govern a state-court trial, and, as we noted above, the Confrontation Clause does not come into play when the witness is the defendant.

Likewise, Sullivan's claim that he was denied the right to have a judge available at all critical stages of the trial is simply not consistent with the facts of this case. He did not have a right for the judge to be present for jury deliberations. At all other times in this case, the judge was present.

To summarize, the salient portions of Sullivan's statements to the police were presented in open court through audio testimony. Sullivan could have requested the full video recording be published, but he did not. Sullivan could have objected to the video recording by arguing it was cumulative or contained other crime evidence, but he did not. Even if he had, these evidentiary issues do not constitute a violation of the right to a public trial. And finally, the proceedings relating to admitting the DVDs were conducted in open court; the parties were aware of their content; the detectives testified generally in open court about their content; and Sullivan had the opportunity to cross-examine the detectives. Sullivan got the public trial to which he was entitled.

USE OF PRIOR CRIMINAL HISTORY TO ENHANCE SENTENCE

Citing *Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), Sullivan contends that the district court erred in using his criminal history score to increase his sentence because the fact of his prior convictions was not proved to a jury beyond a reasonable doubt.

*Standard of Review*

"Interpretation of a sentencing statute is a question of law, and the appellate court's standard of review is unlimited." *State v. McReynolds*, 288 Kan. 318, 331, 202 P.3d 658 (2009).

*Analysis*

This issue was initially decided adversely to Sullivan's position over a decade and a half ago, in *Ivory,* 273 Kan. at 46-47. Since that time, we have repeatedly reaffirmed the holding in *Ivory.* E.g., *State v. Hall*, 298 Kan. 978, 991, 319 P.3d 506 (2014). Sullivan acknowledges this long-standing precedent but raises the issue to preserve it for federal review.

Affirmed.