NOT DESIGNATED FOR PUBLICATION

No. 117,916

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

FRANCISCO MONTES, JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed August 24, 2108. Convictions affirmed and sentences vacated and remanded.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., LEBEN, J., and BURGESS, S.J.

PER CURIAM: Francisco Montes, Jr. appeals his conviction for two counts of felony criminal threat and his sentences on those convictions.

He challenges the convictions based on a claim that the district court's limitation on his cross-examination of one witness prevented him from fully presenting his defense. But Montes has not shown that the additional areas he wanted to cover in cross-examination were relevant to the specific charges against him, and he didn't make a

detailed enough explanation to the district court of the evidence he wanted to present. We therefore find no basis in the trial record to set aside his convictions.

We find merit, though, in one of Montes' claims of sentencing error. The district court treated a Florida burglary conviction as a prior person offense, which led to a more severe presumptive sentence than would have otherwise been the case. Under *State v. Wetrich*, 307 Kan. 552, Syl. 3, 412 P.3d 984 (2018), the district court erred on this point; the Florida statute defines burglary more broadly than the comparable Kansas statute does, so the Florida statute had to be considered a nonperson offense for sentencing purposes. We therefore vacate Montes' sentence and remand the case for resentencing.

Montes raises some additional claims of error in the trial court, but we have not found any of those of merit. We will discuss each of those issues later in the opinion.

FACTUAL AND PROCEDURAL BACKGROUND

One day in November 2015, Montes went to COMCARE, a community-mental-health center in Wichita, because he was having "homicidal tendencies." After arriving at COMCARE, Montes filled out an intake card saying that he wanted to see a psychiatrist, and waited in the lobby. The receptionist with whom Montes checked in noted that Montes was agitated, so Deidra Hall—a program manager for COMCARE's crisis center—went to talk with Montes about what was going on. That wasn't the first time Hall and Montes had interacted; he had received services at COMCARE before.

Hall then moved Montes from the lobby to a private meeting room so they could speak in private about what kind of help Montes needed that day. At trial, Hall said Montes identified his main issue as a need for food. Montes, on the other hand, said he went to COMCARE because he was homicidal and "needed to be refrained from the

2

community." Although Montes and Hall disagree about the reason Montes gave Hall for being there, neither party disputes that Montes became agitated at some point during their discussion.

Hall described how she and Montes were sitting about ten feet apart from each other, but when Montes got upset he moved towards Hall and stood up with his hands over her. She said he then yelled, "I'm going to fuck you up, I'm going to fucking kill you, bitch" at Hall. Since Montes' arms were in the air, Hall said she "went under his arms and left the room."

Montes denied saying anything like that to Hall, but he agreed that she left the room at some point during their interaction.

Hall explained that she was afraid Montes was going to hurt her, so she told the receptionist to call 911. Tisha Garland—another COMCARE program manager—went out front to watch Montes. Hall then took over the 911 call. Hall told the jury that while she was on the phone Montes "was continuing to yell, threatening that he was going to kill everybody in the building."

Garland told the jury that Montes' "level of agitation was so intense that [she] immediately decided to go and get [the COMCARE] director, Jason Scheck, who was in his office." Scheck then came to the lobby. He said he observed Montes and then decided to try to speak with him. He and Garland both described how they tried to engage Montes to deescalate the situation to protect the staff and other clients. Their efforts failed, and Scheck said Montes became more agitated. Scheck said Montes then told him he was going to break Scheck's neck.

When it was clear that Montes wasn't going to calm down, someone at COMCARE finally activated the panic alarm system to alert law enforcement of the emergency. An

3

employee also contacted security personnel at the Sedgwick County courthouse, right across the street from COMCARE, to ask for help.

Alan Bennett, a deputy with the Sedgwick County Sheriff's Department, was one of the law-enforcement officers who responded. He told the jury that there were already two officers from the Wichita Police Department at COMCARE by the time he arrived. Bennett personally observed Montes' behavior, which he described as "[e]xtremely agitated." Then he arrested Montes and transported him to the county jail.

The State charged Montes with two counts of criminal threat. At trial, Montes testified in his own defense. He told the jury that he didn't specifically threaten any of COMCARE's employees that day, but that he "made a homicidal threat to the community." On cross-examination, when the State asked Montes to clarify what he meant by a homicidal thought, he replied, "Where you tend to want to hurt or commit bodily harm." Montes said that he had wanted to kill someone that day.

The jury found Montes guilty of both counts of criminal threat and the district court sentenced him to 15 months in prison. Montes then appealed to our court.

ANALYSIS

I. *The District Court Didn't Deny Montes His Right to Present a Complete Defense When It Limited the Scope of Hall's Cross-Examination.*

Montes' first argument is that the district court improperly limited his cross-examination of Hall. Montes contends that this prevented him from presenting a complete defense to the charge because Hall's testimony would have been relevant to whether he had the required mental state to be guilty of criminal threat. Montes says this limitation

4

resulted in a violation of his constitutional rights to present a full defense and have a fair trial.

This court reviews a trial court's decision to limit the scope of a witness' cross-examination for an abuse of discretion. *State v. Wells*, 296 Kan. 65, 86, 290 P.3d 590 (2012). A court abuses its discretion if its decision is based on an error of fact or law, or if no reasonable person could agree with the decision. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

To understand Montes' argument, we must place it in the context of what the State had to prove at trial. The State charged Montes with making a criminal threat, which K.S.A. 2015 Supp. 21-5415(a)(1) defines as "any threat to . . . [c]ommit violence communicated with intent to place another in fear . . . or in reckless disregard of the risk of causing such fear." The State alleged that Montes made specific threats against Hall and Scheck in reckless disregard of the risk of causing them to be in fear.

Montes says that by sustaining the State's objection to Hall's cross-examination, the court prevented him from presenting a full defense because his "history of mental health treatment at COMCARE and his diagnoses were relevant to show that he did not have the reckless mental state" required for a criminal-threat conviction. Essentially, he contends that proof of Hall's and Scheck's knowledge of his past interactions at COMCARE should have led them not to be fearful of him. As Montes put the point in his appellate brief: "If Mr. Montes had a history of receiving treatment at COMCARE for similar 'agitated' behavior, he would have believed the staff were familiar with his behavior and that there was not a risk of placing the employees in fear when he made his general threat to the public."

The State first argues that we shouldn't reach the issues on its merits because Montes didn't make an adequate proffer of evidence as required by K.S.A. 60-405. Under that statute, a judgment won't be reversed because of erroneously excluded evidence unless the record

shows "that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers." K.S.A. 60-405. Montes, on the other hand, suggests that "defense counsel proffered that he sought to cross-examine Hall about Mr. Montes mental health history at COMCARE and his 'mental health issues.'"

At trial, Montes' attorney asked the court: "So you're suggesting . . . that his mental health issues in general [were] not relevant to this trial?" The court responded that the cross-examination wasn't relevant "unless I'm missing something." Then Montes' attorney explained that the evidence was relevant because people go to COMCARE "because [they're] having some kind of mental health issues." Since Montes had mental-health issues and he went to COMCARE "to try to get help, it would be relevant as to what his issues were."

As the district court pointed out, however, Montes' attorney didn't say how Montes' mental-health issues "tie[d] in to whether or not an offense [had] occurred." Nor did Montes's attorney say anything when the court pressed for more information about whether "there's some connection there that I'm missing [that] will relate to this element of the offense or this defense." Montes simply didn't explain what Montes' mental health had to do with the charged offenses or his defense. Using the language from K.S.A. 60-405, Montes didn't "indicate[] the substance of the expected evidence." At the outset, then, we agree with the State that because of Montes' inadequate proffer, he has not preserved this issue for appellate review.

Even if we considered Montes' limited proffer of evidence sufficient, the district court still was within its discretion to limit the inquiry on the details of his past interactions at COMCARE. To consider that, we must compare the rules for determining what's relevant evidence with the specific rationale Montes presents on appeal for the admission of this evidence.

6

In general, all relevant evidence is admissible unless it is otherwise excluded by another evidentiary rule, constitutional provision, or court decision. *State v. Williams,* 303 Kan. 585, 592-93, 363 P.3d 1101 (2016). Evidence is relevant if it tends to prove a significant fact—in legal terms, it must be both material and probative. K.S.A. 60-401(b); *State v. Huddleston,* 298 Kan. 941, 959, 318 P.3d 140 (2014). Evidence is material when it establishes a fact that is at issue; it is probative when it logically tends to prove the material fact. *State v. Coones,* 301 Kan. 64, 78, 339 P.3d 375 (2014).

Montes says Hall's cross-examination was relevant to his theory of defense that he didn't have the requisite mental state to commit these crimes. But he's arguing about the intent related to the general threat to the public that he admits he made—not the specific threats to Hall and Scheck. As we already noted, he contends on appeal that proof of his past interactions would have shown that "he would have believed the staff were familiar with his behavior and that there was not a risk of placing the employees in fear *when he made his general threat to the public*." (Emphasis added.)

In context, then, Montes argues only that he didn't have the requisite mental state for criminal threat when he threatened the general public, but that's not what he was charged with. The State charged him with two counts of criminal threat because of his specific threats towards Hall and Scheck. And Montes doesn't explain how Hall's testimony would have proved that he didn't act in reckless disregard of the risk of placing Scheck and Hall in fear when he individually threatened them. The testimony Montes sought from Hall during the cross-examination would have been neither material nor probative, and the court properly limited the cross-examination because Hall's testimony wouldn't have been relevant.

Finally, even if we were to find that the district court had improperly limited Hall's cross-examination, we agree with the State's final argument that any error would be harmless. An error is harmless if we conclude beyond a reasonable doubt that the error didn't

7

change the trial's outcome. See *State v. Andrew*, 301 Kan. 36, 46-47, 340 P.3d 476 (2014) (using the harmless-error standard for errors involving a defendant's theory of defense).

At trial, both Scheck and Hall testified that Montes' threats towards them made them afraid. And as we will make clear in our discussion of the next issue on appeal, there was no potential jury confusion about what Montes was charged with—the specific threats against Hall and Scheck, not some generic threat to the general public. Montes doesn't explain how evidence of his treatment history would have changed the jury's mind when it considered those specific threats. Thus, any error in limiting Hall's cross-examination would have been harmless.

II. *The District Court Didn't Err by Excluding a Unanimity Instruction.*

Montes' next argument is that the district court erred by failing to tell the jury that it had to agree unanimously on which act was the basis for a conviction—also known as giving a unanimity instruction. Montes says a unanimity instruction was required because, in addition to the evidence showing that he threatened Hall and Scheck, the State also presented evidence that he made a general threat against the public. He claims the jury could have based its guilty verdicts either on that additional threat against the public or on the alleged threats specifically against Hall and against Scheck.

When the State relies on multiple acts to support one charge, either the trial court must give a unanimity instruction to make sure all jurors agree on which of the possible criminal acts is the basis for its verdict or the State must convey to the jury the specific acts it relies on to support the charge. See *State v. Atkins*, 298 Kan. 592, 618, 315 P.3d 868 (2014).

There's no dispute that this case involved multiple acts. The State charged Montes with two counts of criminal threat—one toward Hall and the other toward Scheck. But in

8

addition to those two threats, Montes says the State also presented evidence of a third threat that could have supported another conviction. He points to Hall's testimony, during which she described how, after threatening her, Montes went to the lobby and "threaten[ed] that he was going to kill everybody in the building." Under K.S.A. 2015 Supp. 21-5415(a)(1), a person is guilty of criminal threat if he threatened to "commit violence with intent to place *another* in fear . . . ." (Emphasis added.) So, Montes argues, the threat to kill everybody in the building also could have been a criminal threat.

Even if Montes' "general threat to kill the public" was another act in a multiple-acts scenario, the district court didn't err by excluding a unanimity instruction because the State told the jury which of Montes' acts served as the basis for each charge. During its opening statement, the State told the jury that Montes specifically threatened Hall because he was angry with her. It described how Montes told Hall: "I'm going to F you up [and] I'm gonna F'ing kill you, bitch." Then it explained how Montes threatened Scheck: "Mr. Montes continues to become agitated . . . . And while he's still angry and he's still aggressive, he says . . . as he basically charges at [Scheck] and gets in his face, I'm gonna kill you and I'm gonna snap your neck." The State wrapped up its opening statement by telling the jury that the case was about Montes' threats toward Hall and Scheck.

During its closing remarks, the State tied each of the counts charging criminal threats to specific statements made to Hall and Scheck. The prosecutor first explained how the evidence proved Montes threatened Hall. After reminding them that Montes' told Hall, "I'm gonna fuck you up, [and] I'm going to fucking kill you, bitch," the prosecutor then said, "I would submit he's guilty on count one of criminal threat." When discussing count two, the State talked only about Montes' interaction with Scheck, reminding the jury that the underlying acts for count two were Montes' threats toward Scheck that he was going to kill Scheck and break Scheck's neck.

9

The State appropriately designated which acts the jury needed to consider for each charge. Thus, the district court didn't err by failing to include a unanimity instruction.

III. *The District Court Erred by Classifying Montes' 1995 Florida Burglary Conviction as a Person Felony.*

Montes' third claim of error is that the district court made a mistake in determining his criminal-history score, which plays an important part in determining the presumptive sentence under our state's sentencing guidelines. The district court determined Montes' criminal-history score was a B, based partly on the court's classification of Montes' 1995 burglary conviction from Florida as a person felony. But Montes contends that the court should have classified the Florida conviction as a nonperson felony. In that case, Montes' criminal-history score would have been a C, which would have made Montes' presumptive sentence probation, not prison. See K.S.A. 2015 Supp. 21-6804(a). Whether the district court properly classified Montes' prior conviction is a question of law over which we have unlimited review. *State v. O'Connor*, 299 Kan. 819, 822, 326 P.3d 1064 (2014).

Under the Kansas Sentencing Guidelines Act, a defendant's sentence is based on the severity of the current offense and the defendant's criminal-history score. See K.S.A. 2015 Supp. 21-6804(a), K.S.A. 2015 Supp. 21-6805(a). The severity level of the current offense is set by statute. The criminal-history score is based on the defendant's prior convictions, including those from other states. See K.S.A. 2015 Supp. 21-6809; K.S.A. 2015 Supp. 21-6811(e).

The district court follows a two-step process when categorizing a defendant's prior conviction for calculating the defendant's criminal-history score. First, the court determines whether the prior conviction should be classified as a felony or a misdemeanor. K.S.A. 2015 Supp. 21-6811(e)(2). There's no dispute about whether Montes' 1995 Florida

conviction was a felony under Fla. Stat. § 810.02 (1995), so the next step is to classify the defendant's out-of-state conviction as a person or nonperson offense. To do this, the district court compares the out-of-state offense to a comparable one in effect in Kansas on the date the defendant committed the current crime of conviction. K.S.A. 2015 Supp. 21-6811(e)(3). If there's no comparable offense in Kansas, the conviction must be classified as a nonperson crime. K.S.A. 2015 Supp. 21-6811(e)(3).

When it ruled, the district court had several decisions from our court to rely on that had interpreted "comparable" Kansas offenses as those prohibiting similar conduct as the out-of-state offense—the elements of both crimes didn't have to be identical. See, e.g., *State v. Moore*, 52 Kan. App. 2d 799, 813-14, 377 P.3d 1162 (2016); *State v. Riolo*, 50 Kan. App. 2d 351, 353, 330 P.3d 1120 (2014); *State v. Barajas*, 43 Kan. App. 2d 639, 643, 230 P.3d 784, 788 (2010). But in March 2018, our Supreme Court clarified that "for an out-of-state conviction to be comparable to an offense in Kansas, the elements of the out-of-state crime must be identical to or narrower than the elements of the comparable Kansas crime." *State v. Wetrich*, 307 Kan. 552, Syl. ¶ 3, 412 P.3d 984 (2018).

If we apply *Wetrich* here, Montes is correct that the district court should have scored the Florida conviction as a nonperson offense. The Florida statute was broader than the Kansas burglary statute. In Florida, a burglary meant entering or remaining in a structure with the intent to commit *any* offense in that structure. Fla. Stat. § 810.02(1) (1995). In Kansas, the definition was more limited—the intent had to be to commit a felony, a theft, or a sexually motivated crime there. K.S.A. 2014 Supp. 21-5807.

The State argues that *Wetrich* doesn't control here because of a 2017 amendment to K.S.A. 22-3504 that added the sentence, "A sentence is not an 'illegal sentence' because of a change in the law that occurs after the sentence is pronounced." K.S.A. 2017 Supp. 22-3504(3). The State contends that the Supreme Court's ruling in *Wetrich* was a change in the law after Montes' sentencing, so the new identical-to-or-narrower-than rule

11

doesn't apply to Montes' sentence. But the *Wetrich* court didn't change the law. Instead, it simply clarified the meaning of "comparable offense" in K.S.A. 21-6811: "We can resolve the issue presented here on the basis of statutory interpretation [of K.S.A. 21-6811]." *Wetrich*, 307 Kan. at 558. The statute didn't change, and the *Wetrich* court simply interpreted the statute. See *State v. Thomas*, 53 Kan. App. 2d 15, 24, 383 P.3d 152 (2016), *rev. denied* 306 Kan. 1330 (2017); *State v. Smith*, No. 117,237, 2018 WL 2271412, at \*4 (Kan. App. 2018) (unpublished opinion). We therefore apply *Wetrich* and conclude that the trial court erred when it classified the Florida burglary conviction as a person offense.

The elements of the Montes' Florida crime are broader than the elements of the Kansas crime, so Kansas' and Florida's burglary offenses aren't comparable. See *Wetrich*, 307 Kan. 552, Syl. ¶ 3 ("[T]he elements of the out-of-state crime cannot be broader than the elements of the Kansas crime.") Given *Wetrich*, Montes' criminal-history score should have been C instead of B. We will therefore vacate Montes' sentence and remand the case for resentencing.

IV. *The District Court Didn't Err by Considering Montes' 1995 Florida Convictions When Calculating His Criminal-History Score.*

As Montes' final claim, he argues that the district court couldn't consider any of his Florida convictions at all since the State didn't present evidence of it to a jury. Montes says the failure to do so deprived him of his Sixth Amendment right to a jury and his Fourteenth Amendment right to due process, as explained in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

Montes' presentencing-investigation report shows that he has 18 prior convictions—the first six are out-of-state convictions. Before sentencing, Montes objected to the court using all six of those convictions to figure out his criminal-history score. The court granted Montes' motion for four of the six entries and only relied on two of Montes' out-of-state

convictions for criminal-history scoring: his 1995 convictions for burglary and battery on a law-enforcement officer.

Our Supreme Court rejected the same argument Montes is making here in *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002). The *Ivory* court explained that "[t]he [Kansas Sentencing Guidelines Act] builds criminal history into the calculation of a presumptive sentence, rather than using criminal history as an enhancement." And the *Apprendi* court explicitly carved out an exception for courts to use a defendant's prior conviction to increase that defendant's penalty. 273 Kan. at 46.

We are of course duty bound to follow Kansas Supreme Court precedent unless the court somehow suggests that it is moving away from its earlier holding. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). No such indication exists here, see *State v. Sullivan*, 307 Kan. 697, 708, 414 P.3d 737 (2018), so the district court didn't err when it considered Montes' prior convictions without requiring the State to prove those convictions beyond a reasonable doubt.

We vacate Montes' sentence and remand the case for resentencing. In all other respects, the district court's judgment is affirmed.

13