NOT DESIGNATED FOR PUBLICATION

No. 122,269

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MATTHEW JON ALVIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ellis District Court; GLENN R. BRAUN, judge. Opinion filed October 8, 2021. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., HILL and HURST, JJ.

PER CURIAM: After a bench trial, the judge found Matthew Jon Alvis guilty of several crimes. When he asked for a new trial, Alvis claimed that his counsel had failed to adequately investigate his alibi and then present that alibi defense to the court. The court heard the alibi defense evidence during the hearing on the motion for a new trial and found the witnesses were not believable and denied his motion for a new trial. Those facts raise one issue in this appeal. Does the judge's lack of credibility findings mean that Alvis cannot show reversible error—that is to say, the results of his trial would have been different if counsel had properly investigated and presented his alibi at trial?

1

*A former girlfriend reports Alvis to the police. A chase follows.*

In the summer of 2018, Alvis dated Savannah Weilert for a few weeks. While they were dating, she sold Alvis a white Pontiac car with damaged passenger side doors. When Alvis broke up with Weilert on August 16, 2018, it was a bumpy split.

Two days after breaking up, Weilert called 911 and reported that Alvis had some marijuana and was driving his white Pontiac G6 with damaged passenger side doors and a license plate registered to another vehicle. She gave the 911 dispatcher the license plate number of that vehicle. She reported that Alvis had just left her house and was on the way back to his house.

After her 911 call, police spotted the vehicle turning into a Wendy's parking lot. Corporal Vilaysing followed the car into the parking lot. The dispatcher confirmed the tag on the vehicle was registered to a Chevy pickup truck and not the Pontiac. Vilaysing pulled up alongside the vehicle, about 40 feet to the east of it as the vehicle went through the Wendy's drive-through. The driver of the Pontiac looked right at him, and they made eye contact. At that moment, Vilaysing identified Alvis as the driver.

As the Pontiac left the drive-through, Corporal Vilaysing turned on his emergency lights to stop the Pontiac, but the car did not stop. It turned into a Dillons parking lot and quickly began to accelerate. Vilaysing activated his sirens and gave chase. The driver committed several moving violations including excessive speeding, driving in the center lane, and failing to stop at stop signs. En route, the driver tossed a baggie of marijuana out of the window, which was later recovered by the police.

Vilaysing pursued the Pontiac through Hays until he lost sight of the vehicle on a dirt road. A few minutes later, another officer located the Pontiac parked at a residence in

rural Ellis County. Alvis was not in the vehicle. Officers canvassed the area but did not locate Alvis.

*Alvis is charged, tried to the court, and convicted.*

The State charged Alvis with possession of marijuana, fleeing or attempting to elude a police officer, interference with law enforcement, and possession of drug paraphernalia. Alvis chose a bench trial.

At trial, Weilert testified that on August 18, 2018, she went to Alvis' house, and they smoked marijuana together. Alvis drove her home. Afterward, she made the 911 call. On cross-examination, defense counsel asked Weilert if she was angry and wanted to get Alvis into trouble. Weilert testified she was angry with Alvis.

Corporal Vilaysing testified he was "[a] hundred percent" confident Alvis was the driver of the Pontiac. Vilaysing knew Alvis as soon as he saw him. Vilaysing had two encounters with Alvis eight years earlier. After the traffic chase, he pulled Alvis' mugshots to confirm that Alvis was the one driving the Pontiac.

Alvis testified he last saw Weilert on August 16, 2018—the day they broke up. He testified he did not drive the Pontiac on August 18, 2018. He testified, "I believe I was in Dighton, Kansas, working with my cousin . . . doing a tree service."

In closing, trial counsel argued that Weilert was not credible because she was evasive and obviously wanted to get Alvis into trouble. Trial counsel questioned Corporal Vilaysing's identification of Alvis because Vilaysing had not seen Alvis for eight years. Trial counsel argued that Vilaysing saw who he wanted to see in the driver's seat based on the information from dispatch. Trial counsel pointed out that the State presented no fingerprint, DNA evidence, or any video footage that showed Alvis as the driver.

The court found Alvis guilty as charged. The court believed Weilert's report because it was verified by the officers within moments of her 911 call. Alvis was observed driving the Pontiac and did have marijuana as she described. The court also found Corporal Vilaysing's testimony credible and reliable.

*At a posttrial hearing, the court appoints Alvis a new lawyer and takes testimony on his alibi defense.*

Before sentencing, Alvis moved for a new trial, alleging his trial attorney was ineffective in failing to present his alibi defense. The court appointed Alvis new counsel and held an evidentiary hearing on the motion.

Alvis testified he told trial counsel that his mother knew he was working with his cousin, Jason Johnson, on August 18, 2018, in Dighton, Kansas. Alvis told his counsel that Johnson would have more information about the job they worked that day. Alvis gave trial counsel his mother's contact information and his cousin's name. He asked trial counsel to get his cousin's phone number from his mother. He recalled his trial counsel later telling him that his mother did not know where he was on that day. Trial counsel told him that she had called Johnson and left him a voicemail, but Johnson never called her back. Trial counsel told him she was not confident in his alibi and wanted to try a different defense. Alvis testified he insisted on the alibi defense. Alvis tried calling Johnson before trial but could not get ahold of him.

Alvis' mother, Angela Alvis, testified that she spoke with trial counsel on the phone for a while. Angela testified she told trial counsel that Alvis had been working with his cousin, Johnson. But she did not know for sure he was working that day because she was not with him. She gave trial counsel Johnson's phone number. Angela told trial counsel she was not sure if Johnson would come to court.

4

Johnson testified he did not talk to Alvis' trial counsel. He testified he worked with Alvis and another man, Theodore Evans, in Dighton on August 18, 2018. He brought a work order dated August 18, 2018, which listed "Matt" and "Ted" as sales representatives. They worked from 11 a.m. to 7 p.m. that day. Johnson testified he was 100 percent positive that Alvis worked with him in Dighton the entire day on August 18, 2018.

Trial counsel testified that she always knew Alvis was alleging a possible alibi defense. Alvis gave her his cousin's name. Alvis' mother told her she did not know where Alvis was on August 18, 2018. Trial counsel thus eliminated the mother as an alibi witness. Trial counsel testified Alvis told her that Johnson would only give her a signed affidavit or document, and would refuse to come to court. Alvis' mother also confirmed that Johnson would not testify. Trial counsel was not sure if she had tried to contact Johnson. She did not think she ever had his phone number, but remembered he lived in Dighton. She did not try to locate Johnson or do any other investigation of the alibi. She decided to pursue a different defense.

In closing, Alvis' attorney for the motion hearing told the court she found Johnson with "pretty minimal effort."

The district court denied the motion for a new trial, finding it "a bit unbelievable quite frankly" that Johnson did not come forward earlier and found the work order "suspicious." And the court found trial counsel had made a strategic decision not to pursue an alibi defense and that the evidence against Alvis was "overwhelming."

The court sentenced Alvis to a 30-month prison sentence and 12 months' postrelease supervision.

In this appeal, Alvis raises three issues. First, did the court err when it denied his motion for a new trial because of the ineffective assistance of his trial counsel? Second, is there sufficient evidence in this record to show that his prior conviction for fleeing or eluding was a felony conviction? Third, did the court violate his right to a jury trial under the Kansas Constitution by using his prior convictions without requiring proof of them beyond a reasonable doubt? We will address the issues in that order.

*We conclude that Alvis' trial counsel was deficient by failing to investigate his alibi defense.*

A person cannot be in two places at the same time. The alibi defense has been with us virtually from the beginning of defenses. It is classic. Alvis could not have been driving a Pontiac in Hays if he was in Dighton trimming trees. Several cases offer us guidance on this point. When it comes to an alibi defense, counsel must act. Failing to verify an alibi is deficient performance.

When a defendant claims to have an alibi, the defense counsel's failure to investigate, contact witnesses, or provide notice of alibi witnesses constitutes deficient performance. Counsel cannot disregard pursuing this line of investigation and call it trial strategy. But where defense counsel conducts a thorough investigation and concludes, as a matter of strategy, not to call alibi witnesses, counsel's representation is presumed reasonable. *Shumway v. State*, 48 Kan. App. 2d 490, 497-500, 293 P.3d 772 (2013) (failure to call alibi witnesses to testify); *State v. James*, 31 Kan. App. 2d 548, 552-54, 67 P.3d 857 (2003) (failure to subpoena alibi witness); *State v. Thomas*, 26 Kan. App. 2d 728, 731-32, 993 P.2d 1249 (1999) (failure to file a notice of alibi); *State v. Sanford*, 24 Kan. App. 2d 518, 948 P.2d 1135 (1997) (failure to contact alibi witnesses).

Counsel must investigate. "Part of the duty to make reasonable investigations includes the duty to investigate completely the details of a defendant's alibi." *LaPointe v.*

*State*, 42 Kan. App. 2d 522, 542, 214 P.3d 684 (2009). Such investigation means answering questions such as: Where was the defendant when the alleged crime was committed? Were they there by previous appointment? Who can verify their story? What are their full names and addresses? Are the alibi witnesses friends or family? Is there any documentary corroboration? Does the alibi cover the entire time in question? 42 Kan. App. 2d at 542.

In *Sanford*, this court found ineffective assistance of counsel when the defendant provided defense counsel with the names of several potential alibi witnesses, but counsel ceased attempts to contact them after speaking with one witness who said none of the other witnesses would help the defendant. Counsel did not question those other witnesses to determine whether they could provide an alibi. This court held that the failure by defense counsel "to make more than perfunctory attempts to contact alibi witnesses and to investigate further . . . was not reasonable under the facts presented." 24 Kan. App. 2d 518, Syl. ¶ 5.

In *James*, the defendant told his attorney that his neighbor could provide him with an alibi and asked the attorney to speak with the neighbor and subpoena him. The attorney did not subpoena the neighbor. The attorney explained that the neighbor did not want to testify. But at a posttrial hearing, the attorney did not testify or infer that the neighbor would have been unable to provide the alibi evidence claimed by the defendant. Thus, this court held the failure to call the neighbor was "serious error which prejudiced appellant." 31 Kan. App. 2d at 553-54.

In *Shumway*, the defense attorney investigated the defendant's potential alibi defense but decided not to call either alibi witness to testify. The defense attorney explained that he had concerns with the witnesses' testimony for many reasons. But despite these concerns, the witnesses could provide an alibi for the defendant. This court

7

held the attorney was ineffective for failing to call either witness because he had no other witnesses who could establish the defendant's innocence. 48 Kan. App. 2d at 498-502.

But this does not mean the counsel has to present the defense if counsel, after investigating, finds it unwarranted. The cases suggest that counsel are not ineffective when they thoroughly investigate the alleged alibi and make a strategic decision that the purported testimony would harm the defense. In *Allen v. State*, No. 110,370, 2014 WL 4081967, at *2-3 (Kan. App. 2014) (unpublished opinion), the defendant claimed he was working with his uncle in Texas on the day of the crimes. The defendant gave his defense attorney his uncle's phone number. The defendant also alleged the uncle could provide the contact information for several other individuals that worked with him that day. And the defendant alleged his cell phone records would confirm his location at the time of the crimes. The defense attorney testified:

> "'I immediately got on the phone and started making phone calls and tracking down alibi witnesses, obtained funding to have alibi witnesses travel up from Texas. I got our investigator—we had an investigator in the Liberal—or Garden City office. I got him to work in calling witnesses and looking into the alibis. I issued the subpoena for the phone records, had my investigator go serve that and get Mr. Allen's phone records as he requested.'" 2014 WL 4081967, at *7.

But in *Allen*, the defense attorney testified that when she spoke to the defendant's uncle and aunt, they both told her that the defendant's alibi was a lie. The defendant's phone records confirmed it was a lie. The attorney determined this evidence would harm the defense. The attorney asked her investigator and the defendant's uncle to assist contacting the other possible witnesses but was unable to contact them. The defendant presented no alibi witnesses at the evidentiary hearing on his posttrial motion. A panel of this court concluded that the defense attorney's decision not to present an alibi defense was a reasonable trial strategy developed after a thorough investigation. 2014 WL 4081967, at *7-8. See also *Briseno v. State*, No. 117,778, 2018 WL 6005418, at *4-7

8

(Kan. App. 2018) (unpublished opinion) (attorney not ineffective when she investigated but did not pursue alibi defense due to concern that the testimony had credibility problems and where defendant did not ask attorney to pursue alibi defense); *Dreiling v. State*, No. 97,201, 2007 WL 3275910, at *7-9 (Kan. App. 2007) (unpublished opinion) (defense counsel not ineffective where counsel made strategic decision after meeting with alleged alibi witness and defendant had approached other people about providing a false alibi).

Using those cases as a measure of what counsel *should* do, we see that trial counsel here was perfunctory, at best. At the motion hearing, trial counsel acknowledged Alvis always claimed he had an alibi. Trial counsel had at least six weeks to prepare for trial. Alvis was incarcerated before trial. Alvis gave trial counsel Johnson's name. Trial counsel decided against pursuing an alibi defense after only speaking with Alvis' mother.

But trial counsel could not have known that Alvis' alibi was illegitimate from speaking with his mother. Alvis' mother did not tell trial counsel Alvis' alibi was a lie like the witness did in *Allen*; the mother said she could not be certain about where Alvis was on August 18, 2018. Alvis did not allege he was with his mother at the time of the crimes; he alleged he was with Johnson. Trial counsel could not remember if she had tried to contact Johnson. She did not think she ever had his phone number, but remembered he lived in Dighton. She testified she did not perform searches to locate Johnson or do any other investigation of the alibi. Rather, she decided to pursue a different defense. But she did not specify what that defense was.

Alvis testified at the motion hearing that trial counsel told him that she had called Johnson and left him a voicemail, but he never called back. To explain her lack of further effort to contact Johnson, trial counsel explained that Alvis and Alvis' mother told her Johnson would only give her a signed affidavit or document but would refuse to come to court. She did not speak with Johnson to determine whether the alibi was legitimate so

9

that she could subpoena him. She did not determine whether Johnson would have been a credible witness. She did not try to get the document he allegedly had to see if it verified the alibi or would lead to other witnesses. She explained that she did not pursue the alibi further because "there were videos and things with the case that—it was my decision to pursue a different kind of defense than an alibi defense." But there was no video footage that identified Alvis as the driver of the white Pontiac.

Alvis' attorney for the motion hearing told the court she found Johnson with "pretty minimal effort." Johnson testified he was 100 percent positive that Alvis was working with him in Dighton on August 18, 2018, and that Alvis was there from 11 a.m. to 7 p.m. The work order had the name of the homeowner and another worker.

Like the deficient performance depicted in *Sanford*, trial counsel here only made a "perfunctory attempt" to contact Johnson after being told by Alvis' mother that he may not want to testify. This does not equate to a full investigation into Alvis' alleged alibi. Trial counsel's performance was deficient. But that does not mean we will reverse just for this reason.

*Has Alvis shown that the trial outcome would have been different if he had presented additional evidence of his alibi to the court?*

Alvis must show us two things. Deficient performance by his counsel and prejudice to his case. To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish both

- that the performance of defense counsel was deficient under all of the circumstances; and
- prejudice—that there is a reasonable probability the result of the trial would have been different without the deficient performance.

*State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]); *Harris v. State*, 288 Kan. 414, 416, 204 P.3d 557 (2009).

Alvis has shown deficient performance. We turn now to prejudice.

The district court has made two credibility judgments that we will not touch. The court found Alvis' alibi evidence "unbelievable." In contrast, the court found Corporal Vilaysing' s testimony "very compelling . . . specific. It's not often an officer testifies with 100 percent certainty and he never deviated from that, even after cross-exam."

The court found that Vilaysing and Weilert corroborated each other's testimony. The court considered the evidence against Alvis "overwhelming." Thus, while Weilert may have had a motive to lie because she was angry at Alvis, as the judge noted at trial she "would have better odds of winning the Powerball" than correctly guessing someone closely resembling Alvis would be driving his car with marijuana inside, near the location where she said Alvis would be, at the right time. Although Vilaysing's identification of Alvis stemmed from two brief encounters eight years earlier, Vilaysing confirmed his identification by looking at Alvis' mug shots soon after. Nobody disputed that the white Pontiac belonged to Alvis (though technically in his mother's name).

This court cannot reweigh the evidence or make our own credibility determinations. *State v. Butler*, 307 Kan. 831, 855, 416 P.3d 116 (2018). Thus, Johnson has not shown the result of the trial would have been different. The trial judge believed Vilaysing' s identification of Alvis and disbelieved the alibi testimony.

We will not reverse Alvis' conviction on this issue. We turn now to the issue about the evidence concerning his prior convictions.

*Raised for the first time in this appeal, we must address a concern about Alvis' criminal history. We find the issue moot.*

For the first time on appeal, Alvis contends his presentence investigation report did not provide sufficient evidence to support the classification of his prior fleeing or eluding conviction in Ellis County case no. 12CR32 as a felony and was thus insufficient to satisfy the State's burden of proving his criminal history. Alvis contends remand is required under *State v. Obregon*, 309 Kan. 1267, 1275-76, 444 P.3d 331 (2019).

Indeed, Alvis' PSI report listed one prior person felony: a 2012 Ellis County conviction for fleeing or attempting to elude in violation of K.S.A. 8-1568, case no. 12CR32. The PSI report did not show which subsection of K.S.A. 8-1568 Alvis violated. This could be significant. A conviction under K.S.A. 8-1568(a) can be a nonperson misdemeanor or a person felony depending on the circumstances. A conviction under K.S.A. 8-1568(b) is a person felony. See K.S.A. 2020 Supp. 8-1568(c).

The record shows that we should not be concerned about this. At sentencing, the court asked Alvis whether he had reviewed the PSI report: "It indicates that you have 13 prior convictions, five of those being felonies, one of those being a prior person felony, which was also for fleeing or eluding a police officer from 2012. Is that an accurate criminal history?" Alvis confirmed that was accurate. He confirmed again later in the hearing that he had a prior *felony* fleeing or eluding conviction.

After sentencing and upon order from the district court, the State added records from Ellis County case no. 12CR32 to the record on appeal. The amended complaint, journal entry of plea and conviction, and journal entry of judgment show that Alvis was charged with and pled no contest to fleeing or eluding under K.S.A. 8-1568(b)(1)(E)—a person felony.

And a change in Alvis' custodial status further suggests we should not be concerned with this. While this appeal was pending, the State filed a notice of change in custodial status stating Alvis completed the prison portion of his sentence on July 13, 2021, but remained subject to postrelease supervision. The State attached a "Certification of Time Served" on Kansas Department of Corrections letterhead. The document contains a signed certification by Vickie Belanger, Senior Administrative Assistant, that states:

> "I, the undersigned Vickie Belanger, of lawful age being duly sworn, do herby, declare and certify that I am designated as a Public Service Administrator for the Kansas Department of Corrections and by virtue of my said office I am the legal keeper of all official records and files of the Office of the Secretary of Corrections. The foregoing is true and correct information from the records of: **ALVIS, Matthew J.**"

The last notation on the document of Alvis' custodial status states, "07/13/21 Released, Parole in state."

The State contends Alvis' sentencing claims are moot because Alvis has completed the prison portion of his sentence, though he is still on postrelease supervision. The State attached certified documentation from the Kansas Department of Corrections. Alvis did not respond to the State's assertion of mootness.

Other panels of this court have held challenges to a defendant's criminal history moot when the defendant was still on postrelease supervision because the criminal history score does not affect the mandatory term of postrelease supervision under K.S.A. 2020 Supp. 22-3717(d). The term of postrelease supervision is determined by the severity level of the crime, not the defendant's criminal history score. The court is thus unable to grant meaningful relief. See, e.g., *State v. Castle*, 59 Kan. App. 2d 39, 48, 477 P.3d 266 (2020).

13

The State has met its burden to establish a prima facie showing of mootness. Alvis has not met his burden to show that dismissal would impair a substantial interest or that an exception to the mootness doctrine applies. His claim that his criminal history was scored improperly is moot. We move now to his last issue.

*Kansas Supreme Court precedent compels us to hold that Alvis' sentence does not violate the Kansas Constitution's guarantee of trial by jury.*

Alvis contends the use of his prior convictions to determine his sentence violated his jury trial rights under section 5 of the Kansas Constitution Bill of Rights and the Sixth Amendment to the United States Constitution.

Our Supreme Court has repeatedly rejected this challenge under the United States Constitution. See, e.g., *State v. Sullivan*, 307 Kan. 697, 708, 414 P.3d 737 (2018) (reaffirming *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 [2002]).

And our Supreme Court also rejected this challenge under the Kansas Constitution. In *State v. Albano*, 313 Kan. 638, Syl. ¶ 4, 487 P.3d 750 (2021), the court held "[s]ection 5 of the Kansas Constitution Bill of Rights does not guarantee defendants the right to have a jury determine the existence of sentence-enhancing prior convictions under the revised Kansas Sentencing Guidelines Act."

With no indication our Supreme Court is departing from these positions, we are duty-bound to follow this precedent. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). Alvis' sentence does not violate either Constitution.

Affirmed.